UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

VANSH LAST NAME UNKNOWN,

      Petitioner,

      v.

MICHAEL BALL et al.,

      Respondents.

_____

26-CV-1249-LJV

DECISION & ORDER

On June 17, 2026, Vansh (last name unknown) filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility in Batavia, New York. Docket Item 1. Among other things, Vansh argued that his detention was unlawful because he was arrested without the warrant required by 8 U.S.C. § 1226(a). Docket Item 1 ¶ 1. He requested his immediate release, or, in the alternative, a bond hearing. *Id.* ¶ 20.

About a week later, this Court granted Vansh's petition "to the extent it s[ought] a bond hearing." Docket Item 5. At the same time, the Court ordered further briefing from both sides on Vansh's argument regarding the respondents' failure to obtain a warrant prior to his arrest. *Id.* That issue is the only one now before this Court.[1]

---

[1] Vansh has since had a bond hearing, and the immigration judge ordered him released on bond. Both sides agreed at oral argument, however, that the petition is not moot because Vansh requested his immediate release, and the remedy of immediate release would not require a bond. Vansh's counsel also argued that the issues in this case fall under the "capable of repetition, yet evading review" exception to the mootness doctrine. *See Doe v. McDonald*, 128 F.4th 379, 386 (2d Cir. 2025) (quoting *Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 84-85 (2d Cir. 2005)).

For the reasons that follow, the Court finds that Vansh's warrantless arrest violated due process and that he therefore is entitled to immediate release without a bond.

### BACKGROUND[2]

Vansh "is a citizen of India" who has lived in the United States since he "entered . . . without inspection on or about June 11, 2024." Docket Item 1 ¶ 1. That same day, Vansh was "released on [his] own recognizance" under 8 U.S.C. § 1226. *See id.* ¶ 4; *see also* Docket Item 1-4. About five months later, Vansh applied for asylum, and on May 22, 2026, an immigration judge denied his application and ordered him "removed to India." Docket Item 1 ¶¶ 5, 7. On June 17, 2026, Vansh appealed that decision to the Board of Immigration Appeals. *Id.* ¶ 9; Docket Item 1-7.

"[E]ven though [Vansh] was still within the period to appeal his asylum denial and ha[d] attended all required appointments with immigration authorities," United States Immigration and Customs Enforcement ("ICE") arrested him on June 15, 2026. Docket Item 1 ¶ 11. But ICE did not have a warrant to arrest Vansh, nor did it give him "a pre-deprivation hearing or any opportunity to challenge the reason[s] for his detention." *Id.* ¶¶ 12-13.

Vansh filed this petition for a writ of habeas corpus on June 17, 2026, alleging that his detention violated the Immigration and Nationality Act and his right to due

---

Because the government agreed that the case is not moot on other grounds, the Court need not and does not decide whether it falls into this exception.

[2] The Court takes these facts primarily from the petition, Docket Item 1, and the Court's docket.

process.  *See generally* Docket Item 1.  As relevant here, Vansh said that because he was detained under 8 U.S.C. § 1226(a), ICE was required to obtain a warrant before arresting him.  *Id.* ¶¶ 3, 13-14; *see also* Docket Item 1-2 (Vansh's Notice of Custody Determination).  Vansh therefore requested his immediate release with an order requiring the respondents to provide him with "adequate advance notice" and a pre-deprivation hearing before re-detaining him.  Docket Item 1 at 27.[3]

Because *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) and *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579 (W.D.N.Y. 2025) seemed to apply to Vansh's petition, the Court ordered the respondents to show cause why the petition should not be granted in part under those two decisions.  Docket Item 2.  In response, the respondents acknowledged that in *Barbosa da Cunha,* the Second Circuit held that section 1226(a), not section 1225(b)(2)(A), applied to "noncitizens, [like Vansh], who are present in the United States after entering the country without inspection and admission[] and who were not apprehended while entering the country or shortly thereafter."  Docket Item 4 at 2 (quoting *Barbosa da Cunha*, 175 F.4th at 69).  And the respondents did not distinguish this case from *Alvarez Ortiz*, 808 F. Supp. 3d. at 596-601, in which this Court held that a noncitizen detained under section 1226(a) is entitled to a bond hearing with the burden of proof on the government.  *See generally* Docket Item 4.  This Court therefore granted the petition in part and ordered a bond hearing before an immigration judge.  Docket Item 5.  And on July 8, 2026, an immigration judge held that hearing and ordered Vansh released on bond.  Docket Item 10.

---

[3] Page numbers in docket citations refer to ECF pagination.

On June 25, 2026, the Court ordered additional briefing on Vansh's argument "that immediate release is the appropriate remedy 'where the [g]overnment did not comply with the plain language of [section] 1226(a) and no warrant was properly issued.'"  Docket Item 5 (alterations in original) (quoting Docket Item 1 ¶ 58).  After both sides briefed the issue, Docket Items 6 and 7, the Court heard oral argument, *see* Docket Item 11.  For the reasons that follow, Vansh's arrest without a warrant was unlawful, and he is entitled to immediate release without a bond.

## **LEGAL PRINCIPLES**

28 U.S.C. § 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is "in custody in violation of the laws or treaties of the United States."  *See Simmonds v. I.N.S.*, 326 F.3d 351, 354 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  "When a petitioner brings a habeas petition [under section] 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'"  *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).  "The equitable principles governing [section] 2241 are reflected in the plenary discretion vested in habeas courts to 'hear and determine the facts[] and dispose of the matter as law and justice require.'"  *Id.* (alterations omitted) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1093 (2d Cir. 1990)).

## DISCUSSION

### I.    STATUTORY AND REGULATORY BACKGROUND

#### A.    Section 1226(a)

This Court has found, and both parties agree, that Vansh's detention is governed by 8 U.S.C. § 1226(a).  *See* Docket Item 5.  Under that section, "*[o]n a warrant issued by the Attorney General*, [a noncitizen] may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States."  8 U.S.C. § 1226(a) (emphasis added).  In other words, under the plain text of the statute, ICE must obtain a warrant from the Attorney General before arresting a noncitizen subject to detention.

#### B.    8 U.S.C. § 1357(a) and 8 C.F.R. § 287.8

There is an exception to the warrant requirement in section 1226(a), however:  8 U.S.C. § 1357(a)(2) "provides ICE with limited authority to conduct warrantless arrests." *Sisalema Rea v. Ball*, 2026 WL 1959270, at *2 (N.D.N.Y. July 2, 2026) (quoting *Curimilma Quille v. Blanche*, 2026 WL 1453889, at *5 (E.D.N.Y. May 22, 2026)).  More specifically, under that statute,

> [a]ny officer or employee . . . authorized under regulations prescribed by the Attorney General . . . ha[s the] power without warrant . . . to arrest any [noncitizen] in the United States, if he [or she] has reason to believe that the [noncitizen] so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his [or her] arrest.

8 U.S.C. 1357(a)(2).

8 C.F.R. § 287.8(c)(2) echoes the two requirements for conducting a warrantless arrest of a noncitizen under section 1357(a)(2).  It provides:

> (i)     An arrest shall be made only when the designated immigration officer has reason to believe that the person to be arrested has committed an offense against the United States or is [a noncitizen] illegally in the United States.
>
> (ii)    A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained.

8 C.F.R. § 287.8(c)(2)(i)-(ii).

Therefore, based both on the statute and on the regulations, to lawfully arrest a noncitizen who falls under section 1226(a) without a warrant, the arresting official must have reason to believe that the noncitizen is (1) present in the United States illegally and (2) likely to escape before a warrant can be obtained.  *See* 8 U.S.C. § 1226(a); 8 U.S.C. § 1357(a); 8 C.F.R. § 287.8(c)(2).

## II.    LAWFULNESS OF VANSH'S ARREST

At oral argument, the parties did not dispute that ICE did not have a warrant to arrest Vansh.  And while Vansh's immigration record indicates that he was present in the United States unlawfully, *see* Docket Item 1-2 (Vansh's Notice to Appear), the government conceded that there was no evidence that the arresting officer believed Vansh was "likely to escape before a warrant c[ould] be obtained for his arrest." *See* 8 U.S.C. 1357(a)(2).  Therefore, Vansh's arrest did not comply with the relevant statutes and regulations, and—as this Court held in *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 164-66 (W.D.N.Y. 2025)—that failure violated his right to due process.  The question, then, is what is the remedy?

6

### III.    IMMEDIATE RELEASE

Vansh says that release is "the only appropriate remedy" for an "arrest [that] was illegal ab initio." Docket Item 7 at 2 (collecting cases). In response, the government says that Vansh is entitled to nothing more than a bond hearing, which he already has been given. Docket Item 6 at 1. The government argues that requiring a bond hearing serves the government's interest in protecting the public by requiring a showing of non-danger before a noncitizen is released. *Id.* And the government says that a bond hearing is a small price for a noncitizen to pay in serving that interest. *Id.* For the reasons that follow, the Court agrees with Vansh.

In *Ceesay*, 781 F. Supp. 3d 137, this Court addressed the re-detention of a noncitizen who was subject to a final order of removal and had been released from ICE custody on an order of supervision. There, ICE had arrested the petitioner without prior notice when he appeared for his regularly scheduled check-in. *Id.* at 146-47. And both because the petitioner was not given an opportunity to be heard and because the person who revoked his release was not authorized to do so, the revocation of the order of supervision did not comply with the relevant regulations. *Id.* at 159-66.

This Court held that "because ICE did not follow its own regulations in deciding to re-detain [the petitioner], his due process rights were violated and he [wa]s entitled to release." *Id.* at 166; *see also Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (finding that "[b]ased on ICE's violations of its own regulations, . . . [the petitioner]'s detention was unlawful" and he was entitled to immediate release). As this Court explained, "[e]veryone—citizen and noncitizen, the innocent and the guilty—is entitled to th[e] sacred right" of due process. *Ceesay*, 781 F. Supp. 3d at 166. And that

7

right is abridged when the government does not follow the rules in detaining a noncitizen.  *See id*.

Those same principles apply here.  Indeed, when ICE detained Vansh without first obtaining a warrant for his arrest, it not only failed to follow its own rules, it also violated the governing statute.  Vansh's arrest therefore was unlawful, and he is entitled to immediate release.[4]

The Court recognizes—as the government observed at oral argument— that when a noncitizen is released because his or her arrest was illegal, the government can immediately take the noncitizen back into custody by arresting him or her the right way. But as this Court observed in *Ceesay*, due process is not an aspirational goal and requiring it for all is not subject to whim or convenience.  *See* 781 F. Supp. 3d at 166. And if there is no consequence for the respondents' failure to take the simple step of obtaining a warrant, what is to stop them from grabbing someone off the street first and checking whether they had the authority to do so later?  *Cf. id.* at 164-65 ("When someone's most basic right of freedom is taken away, that person is entitled to at least some minimal process; otherwise, we all are at risk to be detained—and perhaps deported—because someone in the government thinks we are not supposed to be here.").  Put another way, if ICE can arrest anyone on the street without obtaining the warrant that Congress required, then "[h]ow can anyone feel safe from being swept up

---

[4]  As this Court observed in *Ceesay*, "[i]t is true that not every violation of an agency's rules necessarily requires a wholesale redoing of the agency action."  781 F. Supp. 3d at 165 n.26 (citing *See Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)). But when a procedural requirement "derives from the fundamental constitutional guarantee of due process"—as is the case here—due process requires voiding the agency action.  *See id.*

and put in jail or deported simply based on being targeted by the government?" *See id.* at 166.

In sum, because ICE did not follow its own regulations and violated the applicable statute when it arrested Vansh, his due process rights were violated, and he is entitled to release without any bond. The Court recognizes that an immigration judge already has ordered that Vansh be released on bond and that, if he is released under this Court's order without a bond,[5] ICE can immediately obtain the required warrant and arrest him again—only to release him on a bond identical to the one already issued. And the Court encourages both sides to work out a practical solution that might avoid unnecessary work on the government's part and inconvenience to Vansh. But unnecessary work or not, inconvenience or not, due process takes precedence.

## CONCLUSION

ICE deprived Vansh of the process he was due when it arrested him without a warrant. For all the above reasons, Vansh is entitled to release without a bond, and his request for immediate release is GRANTED. Therefore, irrespective of the status of Vansh's bond, the respondents shall release him within **24 hours** of the issuance of this order. No later than **July 23, 2026**, the respondents shall file a status update on their compliance with that direction.

---

[5] At oral argument, the parties told the Court that, as of that date, Vansh had not yet been released on bond.

SO ORDERED.

Dated:   July 21, 2026
         Buffalo, New York

                                          /s/ Lawrence J. Vilardo
                                      _____
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE